CAROLINE M. BASS, Executrix, *vs.* JOSEPH WHELESS and others. THOMAS CHADWELL, Executor, *vs.* JOSEPH WHELESS and others.

## October Term, 1875.

MORTGAGE ON ADVANCE OF MONEY.—A mortgage of land upon an advance of money is *pro tanto* a sale, and gives the mortgagee, to the extent of the money advanced, all the rights of a *bona fide* purchaser.

MARRIAGE SETTLEMENT SIGNED ONLY BY THE HUSBAND WILL NOT AFFECT THE WIFE'S RIGHTS.—An instrument in the form of a marriage settlement, but executed only by the future husband, by which he renounces his marital rights in the property of his intended wife in favor of herself and her children, has no effect whatever on the rights of the wife.

BONA FIDE PURCHASER FOR VALUE OF PROPERTY SUBJECT TO A TRUST.—A resulting trust, or a trust implied from the use of trust funds, will not avail against a *bona fide* purchaser for value and without notice of the trust.

*Thos. H. Malone,* for complainant.
*Ed. Baxter,* for defendants.

THE CHANCELLOR:—The facts developed in these cases are that on the 27th of May, 1857, John Sigler and wife sold and conveyed to "Martha W. Bilbo, her heirs and assigns forever," the land in controversy, for the consideration of $4,800, of which $1,000 were paid in cash, and the residue secured by the two notes of the said Martha W. Bilbo and William N. Bilbo, her husband, at one and two years, for $1,900, which notes were afterwards paid at maturity. On the 6th of April, 1860, William N. Bilbo and Martha W., his wife, by deed of that date, duly proved and registered, with the privy examination of the wife in due form, sold and conveyed said land to Joseph Wheless in fee, the consideration recited being $2,000 in cash, and $5,000 to be paid at the expiration of twelve months, for

which the said Wheless had given his several promissory notes, payable in bank, to the said William N. and Martha W. Bilbo. In truth, however, no money was ever at any time paid by said Wheless. He merely executed his notes for $5,000, in sums of $1,000 each, payable to the said William N. and Martha W. Bilbo, to enable them to raise money thereon, and the complainant's testators became purchasers from William N. Bilbo of the notes on which their bills are based, before maturity, said notes being endorsed by both of the payees. At the time of the execution of the deed aforesaid Wheless executed and delivered to William N. and Martha W. Bilbo an instrument in writing, reciting the execution of said notes for $5,000, being the consideration of said deed, "for their accommodation, to raise money for their various purposes," and binding himself to reconvey to them said land upon the payment by them of said notes. The transaction was, in effect, a mortgage to secure the said notes to the extent of the money actually realized upon them. The notes on which the bills are filed were bought by complainant's testators, the money advanced upon them being paid to William N. Bilbo. The bills are filed to foreclose the mortgage, admitting the defeasance, by sale of the land for the payment of the notes held by complainants as aforesaid.

Upon the foregoing facts the complainants would be clearly entitled to the relief sought. The land under the Sigler deed vested absolutely in Martha W. Bilbo, and the consideration advanced to the husband would, if there were nothing else in the case, be sufficient to sustain the mortgage as against her. It would be the ordinary case of the mortgage, by the wife, of her land to secure the husband's debt. *McFerrin* v. *White and wife*, 6 Coldw. 499.

The bills are filed against the personal representative of William N. Bilbo, he having died, Martha W. Bilbo, and the children of William N. and Martha W. Bilbo, the children being made defendants upon the suggestion that some claim was set up in their behalf to the land. The defence set up for them and Martha W. Bilbo is that the land, although con-

veyed absolutely to Mrs. Bilbo, as before explained, is in
equity the sole and separate property of Mrs. Bilbo for life,
with remainder to her children. This position is sought to
be sustained by an alleged ante-nuptial contract between Bilbo
and his future wife, then Martha W. Foot, made on the 27th
of January, 1847, in the state of Mississippi, where Martha
W. Foot then resided, and in which state she had valuable
property, real and personal. The instrument thus relied on
purports to be an indenture between William N. Bilbo
and the said Martha W. Foot, but is only signed by Bilbo.
It recites that said Martha W. is the owner of lands, slaves,
and about $6,000 in money and promissory notes, and the
anticipated marriage, and provides that the said William N.
Bilbo, in case the marriage takes place, agrees that he shall
not have any title, interest, or estate in said property, but
that the same, and the profits, " shall be and remain the
sole and exclusive estate of the said Martha W. during
her life, remainder to the child or children (if any) of the
said marriage," and if the said Martha should die without
leaving a child, then the said property shall vest absolutely
in the said William and his heirs. And the said William
covenants, within a reasonable time after coming into pos-
session of said money and notes, to vest the same in slaves,
or other property, " which shall be the sole and separate
estate of the said Martha in the same manner and upon the
same terms of all the other property aforesaid." It is fur-
ther provided that said parties may sell the interest of the
said Martha in said land, and the said William shall invest
the proceeds in other property " for the sole, exclusive
use and benefit of the said ———, upon the same terms,
and in the same manner as the other property before men-
tioned, and subject to the same disposition and limitations
thereon before mentioned; the intention of the parties
hereto being that all the estate of the said Martha, whatso-
ever and wheresoever, real and personal, legal or equitable,
and the profits, shall be the sole and separate estate of the
said Martha for life as, aforesaid, free from the debts,

contracts, or liabilities of the said William, and, after her death, without child of the marriage living aforesaid, to vest in the said William and his heirs."

This deed was acknowledged by William N. Bilbo, before the clerk of the probate court of Lowndes county, Mississippi, on the 27th of January, 1847, and registered in the office of that clerk on the next day. A copy was afterwards, on the 27th of January, 1852, registered in this county.

The argument, based upon this instrument and proof of the pecuniary condition of William N. Bilbo, is that the land in controversy was bought with the proceeds of Martha W. Bilbo's property, whereby a trust, resulting or otherwise, arose in her favor to her sole and separate use for life, with remainder to her children, and that the wife and children are entitled to set up this trust against these complainants.

The argument rests, it will be noticed, upon the idea that the instrument above recited is, in legal effect, a settlement of her property upon the said Martha W. Bilbo, to her sole and separate use for life, with remainder to her children. But the instrument is, in reality, only a limitation of the marital rights of William N. Bilbo, in the event of the marriage, except in one contingency, the death of the wife without leaving a child living at her death. He renounces, in every other contingency, all his marital rights for the benefit of his wife and children. The closing clause of the instrument, quoted above in full, declares the intention of its execution to the same effect. *Young* v. *Smith*, L. R. 1 Eq. 180.

The idea that a future husband, by any instrument executed by him alone, in anticipation of marriage, can tie up the property of his future wife so as to place it beyond her control, and settle it in strict limitation upon her and her children, has no warrant in any principle of law of which I have any knowledge. No person can be deprived of his or her property, or limited in the legal control of it, by any instrument whatsoever not executed by him or her, and where there is no consideration to sustain the concession of a right. The authorities relied upon by the learned counsel for the

defendants as sustaining the position that the grantee in a deed who accepts its benefits is bound by the covenants which constitute the consideration of the grant, can have no application to a case where there is no consideration and no grant. The instrument is clearly binding only upon William N. Bilbo, and is utterly nugatory for any other purpose.

But if the law were otherwise, and the property of Martha W. Bilbo was impressed by the trusts relied on, and the trust funds were distinctly traced into the property in dispute, the defence would be of no avail. At most, it would be a resulting trust, or a trust to be implied from the use of the trust funds. But it is well settled that such trusts will not avail against a *bona fide* purchaser for value and without notice. 1 White & Tudor L. C. 335 (4th Am. ed.); *Sandford* v. *Weeden,* 2 Heisk. 81. There is no pretence that either Wheless or the testators of complainants had any notice of any such trusts previous to the execution of the deed by Bilbo and wife to Wheless, and the receipt of the money on Wheless' notes by Bilbo. The advance of money upon the faith of a mortgage of land is *pro tanto* a sale, and gives such a mortgagee, to the extent of the money advanced, all the rights of a *bona fide* purchaser for value and without notice. A mortgage or trust to secure a preëxisting debt would stand on a different footing altogether, and it is the latter class of authorities which are referred to in the argument in behalf of the defendant on this point.

The complainants are entitled to the relief sought, with costs.